[Cite as *Townsend v. Ohio Dept. of Transp.*, 2014-Ohio-318.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Michael Townsend, Guardian, etc., | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 13AP-578 |
| | | (Ct. of Cl. No. 2008-11044) |
| Ohio Department of Transportation, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on January 30, 2014

*Robert E. Epstein*, for appellant.

*Michael DeWine*, Attorney General, *William C. Becker* and *Christopher P. Conomy*, for appellee.

APPEAL from the Court of Claims of Ohio

TYACK, J.

{¶ 1} Michael Townsend ("appellant"), as guardian for Violet Townsend, is appealing from a post-judgment ruling of the Court of Claims of Ohio in favor of the Ohio Department of Transportation ("ODOT"). Appellant assigns three errors for our consideration:

> ASSIGNMENT OF ERROR I
>
> The trial court abused its discretion in denying the Appellants' Motion requesting an oral hearing on their Motion For Leave To File Instanter: Appellants' Motion For The Discovery Sanctions Of Default Judgment On Liability, Attorney Fees and Litigation Expenses Based Upon ODOT'S Willful Destruction Of Electronic Evidence And Discovery Abuse.

ASSIGNMENT OF ERROR II

The trial court's finding that the parties have completed forensic analysis of ODOT's computer hard drives and that the document in question no longer exists is against the manifest weight of the evidence.

ASSIGNMENT OF ERROR III

The trial court abused its discretion in not finding that the Appellee wrongfully failed to disclose that it had destroyed all potential sources for finding the relevant emails, and not granting Appellants their attorney fees and associated costs in attempting to locate the relevant emails.

{¶ 2} One of the key witnesses at the trial of this case was James Marszal. Marszal's testimony is summarized in a post-trial brief filed by appellant's attorney:

The evidence demonstrated that Defendant's employee James Marszal worked at ODOT's District 12 office for the past 25 years. (Marszal Tr.pp. 5) Mr. Marszal was hired by the Defendant in 1985. From 1985 until 1992 he was an Assistant Maintenance Engineer in District 12's maintenance office. He was the District Maintenance Engineer from 1992 to 1995. From 1995 to 2004 he was working in roadway services as a pavement and maintenance engineer and from 2004 until the time of Violet's crash he was a geotechnical engineer in the production department. (Marszal Tr.pp. 5, 6) In his current position as a pavement engineer, his duties also include providing technical support to the maintenance department. (Marszal Tr.pp. 4, 5)

The evidence established that Mr. Marszal was a valued and highly respected engineer who had influence with the maintenance department that he had been intimately involved with for 19 years. He had an established working relationship with maintenance and was comfortable telling them the he needed work to be done on the highway. Mr. Holloway testified that on Marszal's travels into work he might see a pothole somewhere, call him and say "Hey George, there is a pothole here," and Mr. Holloway testified that he would take care of it.

The evidence clearly established that in the course of his driving the mainline ramp where Violet was injured, Mr. Marszal noticed that during heavy rains there would be more water on the highway than he would have expected. In fact,

upon a couple of occasions, Mr. Marszal said he encountered a significant amount of water in the left lane of that particular ramp. (Marszal Tr.pp. 14, 35)

Mr. Marszal testified that he would encounter water in that left lane upon multiple occasions while driving in his own vehicle. (Marszal Tr.pp. 23, 35)  He stated that it wasn't a matter of you necessarily seeing the water in advance. You felt it when you encountered it. It wasn't something you saw as you approached the area. (Marszal Tr.pp. 16)  His testimony demonstrated that this recurring accumulation of water was not open and obvious to the approaching driver. It was clearly a hazard to unsuspecting motorists, as they would not be able to realize the danger until it was too late. In fact, Mr. Marszal testified that there were times when he drove through the water when he believed there was a potential to hydroplane. (Marszal Tr.pp. 29, 34)

In the course of driving this mainline ramp, Mr. Marszal testified that he noticed that the same guardrail that Violet would later strike was being hit a little more often than he would have expected. (Marszal Tr.pp. 23, 30)  Mr. Marszal also testified that his observations of water on the roadway occurred when the guardrail was being damaged. (Marszal Tr.pp. 35)

Sometime after observing the recurring accumulation of water and the repeated guardrail being hit and damaged multiple times, Mr. Marszal testified that he noticed that there were two storm water catch basins just north of the guardrail that were not completely opened, and he saw that there was debris in the storm water catch basins. (Marszal Tr.pp. 21)

Mr. Marszal testified that when he observed the blocked storm water catch basins, he made the Independence Yard maintenance employees aware of it by sending an e-mail to Mr. Holloway, (Marszal Tr.pp. 27) and probably copied possibly one or two other people as well (Marszal TR.pp. 27) and probably copied possibly one or two other people as well (Marszal TR.pp. 67)  He testified that he asked them to check out the catch basins and clean them if necessary. (Marszal Tr.pp. 21)

Mr. Marszal said he received a response to his e-mail telling him that they could not find the two storm water catch basins that he was referring to. (Marszal Tr.pp. 32) Thereafter, Mr. Marszal testified that he called Mr. Holloway to describe to

him in a little more detail where the two blocked storm water catch basins were located. (Marszal Tr.pp. 32, 33) This was surprising and disconcerting since Brian Jung testified that his duties included cleaning catch basins in that area. Contrary to Mr. Marszal's testimony, Mr. Jung testified that he had not problem locating the two storm water catch basins.

* * *

Mr. Marszal testified that he noticed the two blocked storm water catch basins around the general time frame of the accident, but didn't remember if it was before or after the accident. However, Mr. Marszal testified that he noticed the recurring accumulation of water and recurring guardrail hits prior to his sending the e-mail pertaining to the blocked storm water catch basins. Mr. Marszal testified that he first started noticing the recurring standing water and recurring guardrail hits in 2003 or 2004, three or four years before his deposition which was taken on July 19, 2007. (Marszal Tr.pp. 24, 25, 26) Mrs. Townsend's accident occurred on April 23, 2005.

Although the Plaintiffs made repeated requests to the Defendants for any and all e-mails among Marszal, Holloway, Jung and Mihelich regarding Marszal's observation of the blocked storm water catch basin, the Defendant has been unable to produce any such e-mails.

Additionally, Plaintiffs made repeated requests to the Defendant for any and all work orders Mr. Jung or Mr. Holloway prepared as a result of the information the Independence Yard received from Mr. Marszal. Again, the defendant has been unable to produce any such work orders.

{¶ 3} Stated briefly, the testimony at trial clearly demonstrated that emails from Marszal existed which dealt with the drainage problem. Marszal testified about the content of the emails and the potential recipients of the emails. The information about the emails was before the trier of fact. Counsel for appellant acknowledged that ODOT had been unable to produce the actual emails.

{¶ 4} The problem apparently derives from ODOT's deletion of emails after 28 days. The wreck of Violet Townsend's vehicle occurred in April 2005. A lawsuit was filed in March 2006.

{¶ 5}   Marszal was deposed in July 2007.  In December 2007, the first lawsuit against ODOT was dismissed.  A second lawsuit was initiated in November 2008.  Access to ODOT's email system was not sought until November 2009 over four and one-half years after the emails allegedly would have been sent and over two years after Marszal testified about their existence in his deposition.

{¶ 6}   Counsel for appellant as guardian was correct to assert ODOT was unable to produce the emails.  The emails had been deleted from ODOT's IT system years before they were seriously sought.

{¶ 7}   The trial court judge who heard that post-verdict motion about the emails had the information available.  The emails had long since been deleted.  No one had willfully destroyed them.  They had been deleted as a result of established practices at ODOT.  No oral hearing was necessary.

{¶ 8}   The first assignment of error is overruled.

{¶ 9}   The parties completed what forensic analysis was possible.  The ODOT IT systems had deleted the emails completely.  There was nothing left to analyze.  The trial court's choice of wording could have been better, but the trial court's bottom line was correct.  Forensic analysis of the non-existent is not possible.

{¶ 10}  The second assignment of error is overruled.

{¶ 11}  We cannot find that the trial court abused its discretion in failing to penalize ODOT under the circumstances.  The emails were not sought in earnest for years—to be precise, for over four and one-half years.  The trial court did not abuse its discretion, especially since counsel for appellant as guardian acknowledged the emails were unable to be found.

{¶ 12}  The third assignment of error is overruled.

{¶ 13}  All three assignments of error having been overruled, the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.